# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| KATHERINE DOSSETT, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CERNER CORPORATION d/b/a ORACLE HEALTH, CAMPBELL COUNTY HMA, LLC d/b/a TENNOVA HEALTHCARE – LAFOLLETTE MEDICAL CENTER, and CHS/COMMUNITY HEALTH SYSTEMS, INC.,<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO.<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>*Electronically Filed* |

## CLASS ACTION COMPLAINT

Plaintiff Katherine Dossett ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants, Cerner Corporation d/b/a Oracle Health Inc. ("Oracle Health"), Campbell County HMA, LLC d/b/a Tennova Healthcare – Lafollette Medical Center ("Tennova Lafollette"), and CHS/Community Health Systems, Inc. ("CHS") (together with Oracle Health, "Defendants"). Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.     This Class Action arises from a recent cyberattack resulting in a data breach of information in the possession and custody and/or control of Defendants (the "Data Breach").

2.     Oracle Health is a healthcare software-as-a-service (SaaS) company offering electronic health record and business operations systems to hospitals and healthcare organizations,

1

lost control over its affiliated entity and client's patients' highly sensitive personal information, including Tennova Lafollette.

3. Tennova Lafollette chose to allow Oracle Health access and control over its patients' highly sensitive personal and health information.

4. On information and belief, the Data Breach occurred as early as January 22, 2025. Following an internal investigation, on information and belief, Defendants learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients' personally identifying information ("PII") including names, Social Security number as we as well as personal health information, "(PHI"), including patient medical records, medical record numbers, doctors, diagnosis, medicines, test results, images, care, and treatment. Plaintiff refers to both PII and PHI collectively as "Private Information."

5. Defendants continue to fail to promptly inform Class Members even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

6. Defendants continue to obfuscate the details of the breach as well as the nature of the breach and the threat it posed—how many people were impacted, how the breach happened, and why Defendants delayed for months notification to victims that hackers had gained access to highly sensitive Private Information.

7. Defendants' failure to timely detect and report the Data Breach made patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

8. Defendants knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

9. In failing to adequately protect Plaintiff's and the Class's Private Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendants violated state and federal law and harmed an unknown number of its current and former patients and prospective patients.

10. Plaintiff and members of the proposed Class are victims of Defendants' negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their Private Information. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

11. Plaintiff received medical care from Defendant Tennova Lafollette, maintained patient relationships with Tennova Lafollette, and suffered harm as victims of the Data Breach.

12. Accordingly, Plaintiff, on behalf of herself and a class of similarly situated individuals, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendants' possession.

## PARTIES

13. Plaintiff Katherine Dossett is a natural person and citizen of Lafollette, Tennessee where she intends to remain.

14. Defendant, Oracle Health, is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, Missouri 64138.

15. Defendant Campbell County HMA, LLC d/b/a Tennova Healthcare – Lafollette

3

Medical Center is a Tennessee Limited Liability Company, with its principal place of business at 4000 Meridian Blvd, Franklin, Tennessee 37067. It's registered agent, Russell Baldwin, can be found at the same address.

16.     Defendant CHS/Community Health Systems, Inc. ("CHS"), owns and operates Tennova Lafollette. CHS's principal place of business is at 4000 Meridian Blvd, Franklin, Tennessee 37067. CHS's registered agent, Russell Baldwin, can be found at the same address.

## JURISDICTION & VENUE

17.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and cost. At least one Plaintiff and Defendant are of different states and there are over 100 putative Class members.

18.     This Court has personal jurisdiction over Defendant Oracle Health because its principal place of business in this district.

19.     This Court also has specific personal jurisdiction over Defendant Tennova Lafollette because it contracted with Defendant Oracle Health—a known Kansas City, Missouri entity—to manage its patients' electronic heath records. Moreover, Jurisdiction is proper under Missouri's long-arm statute. *See* Mo. Rev. Stat. § 506.500.1(1).

20.     Tennova Lafollette and CHS knowingly and continually sent its patients' Private Information to Oracle Health as its EHR vendor.

21.     Tennova Lafollette and CHS knew or should have known that Oracle Health stored patients' Private Information in Kansas City, Missouri.[1]

---

[1] Elana Gordon, Cerner Fights For Share In Electronic Medical Records Boom, NPR, KCUR, AND KAISER HEALTH NEWS, July 16, 2013, https://www.npr.org/sections/health-shots/2013/07/16/202419168/cerner-fights-for-share-in-electronic-medical-records-boom.

4

22. Tennova Lafollette and CHS failed to adequately monitor or oversee the maintenance and security of its patients' Private Information which Tennova LaFollette and CHS sent to Oracle Health to be stored in Kansas City, MO.

23. Due to Tennova Lafollette and CHS's actions, patients' Private Information was compromised and/or exfiltrated from Oracle Health's systems.

24. Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action, Plaintiff's Private Information, is situated in this District. *See* 28 USC § 1391(b)(2).

## BACKGROUND FACTS

### *Oracle Health*

25. Oracle Health is a healthcare software-as-a-service (SaaS) company offering electronic health record and business operations systems to hospitals and healthcare organizations.[2] Oracle Corporation acquired the medical records giant Cerner Corporation for $28.3 billion in 2022,[3] making it the second largest electronic health vendor in the United States, providing these services to over 20 percent of the U.S. hospitals.

26. Oracle Health's services are specialized for oncology related corporations and healthcare providers who manage highly sensitive data. Oracle Health thus must oversee, manage, and protect the Private Information of its clients' consumers.

27. On information and belief, these third-party consumers, including Tennova Lafollette's patients, whose Private Information was collected by Oracle Health do not do any business with Oracle Health.

---

[2] *Home*, ORACLE, https://www.oracle.com/health/ (last visited April 15, 2026).
[3] *About*, ORACLE, https://www.oracle.com/corporate/; https://www.cnbc.com/2025/03/06/oracles-federal-electronic-health-record-suffered-nation-wide-outage-.html (last visited April 15, 2026).

5

28.     In working with third party consumers' highly sensitive data, Oracle Health advertises that it "has implemented and will maintain technical and organizational measures designed to prevent accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to Services Personal Information."[4]

29.     Likewise, Seema Verma, the executive vice president and general manager of Oracle Health and Life Sciences, stated, "Cyberattacks represent an imminent and existential threat to healthcare worldwide" and "[o]ur top priority is helping to keep our customers and their patients safe from the debilitating impacts of cyber-terrorism."[5]

30.     Despite recognizing its duty to do so, on information and belief, Oracle Health has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Private Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Oracle Health left significant vulnerabilities in its storage of Plaintiff's and the Class's Private Information for cybercriminals to exploit and gain access to patients' Private Information.

***Tennova Lafollette and CHS Defendants***

31.     CHSPSC, LLC, also known as Community Health Systems ("CHS"), "is one of the nation's leading healthcare providers. With healthcare delivery systems in 33 distinct markets across 13 states, CHS operates 64 affiliated hospitals with more than 9,000 beds and approximately 900 other sites of care, including physician practices, urgent care centers, freestanding emergency

---

[4] *Privacy Policy*, ORACLE, https://www.oracle.com/legal/privacy/services-privacy-policy/#1-4 (last visited April 15, 2026).
[5] *Oracle Protects Healthcare Customers Against Cyberattacks*, ORACLE (Apr. 23, 2024) https://www.prnewswire.com/news-releases/oracle-protects-healthcare-customers-against-cyberattacks-302125192.html

departments, imaging centers, cancer centers, and ambulatory surgery centers."[6]

32. In Tennessee, CHS operates as Tennova Healthcare and operates through different subsidiaries at five locations.[7] One of these subsidiaries includes Campbell County HMA, LLC d/b/a Tennova Healthcare – Lafollette Medical Center ("Tennova Lafollette").[8]

33. Defendant Tennova Lafollette acknowledges that "medical information is personal" stating that they "are committed to protection your medical information."[9]

34. As part of its business, Defendants receive and maintain the Private Information of thousands of current and former patients. In doing so, Tennova Lafollette implicitly and explicitly promises to safeguard their Private Information.

35. In collecting and maintaining its current and former patients' Private Information, Tennova Lafollette agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Private Information.

36. Specifically, Tennova Lafollette's privacy practices states that "we are required by law to maintain the privacy of your health information and to give you Notice of Privacy Practice (this 'Notice') that describes our privacy practices, legal duties and your rights concerning your health information."[10]

37. Despite recognizing its duty to do so, on information and belief, Tennova Lafollette has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Private

---

[6] *Home*, CMTY. HEALTH SYS., https://www.chs.net/ (last visited April 17, 2026).
[7] *Locations*, CMTY. HEALTH SYS., https://www.chs.net/serving-communities/locations#TN (last visited April 15, 2026).
[8] *Id.*
[9] *See, e.g.*, *Notice of Privacy Practices*, TENNOVA HEALTHCARE LAFOLLETTE MED. CTR. (Oct. 29, 2025), https://www.tennovalafollette.com/privacy-practices (last visited April 15, 2026).
[10] *Id.*

Information or supervised its IT or data security agents and employees, including Oracle Health, to prevent, detect, and stop breaches of its systems. As a result, Tennova Lafollette left significant vulnerabilities in its storage of Plaintiff's and the Class's Private Information for cybercriminals to exploit and gain access to patients' Private Information.

***The Data Breach***

38.     Plaintiff Katherine Dossett is a Tennova Lafollette patient. As a condition of treatment with Tennova Lafollette, Plaintiff Dossett provided her Private Information. Tennova Lafollette used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

39.     Tennova Lafollette provided Oracle Health with Plaintiff's Private Information. Thus, Oracle Health was granted access to and custody of Plaintiff's Private Information.

40.     Defendants collect and maintain patients' Private Information in their computer systems.

41.     In collecting and maintaining the Private Information, Defendants implicitly agree that they will safeguard the data using reasonable means according to their internal policies and federal law.

42.     According to Tennova Lafollette's notice to Plaintiff, Cerner provides electronic medical record services to Tenova Lafollette and many other healthcare providers.[11]

43.     Oracle Health informed the Tennova Lafollette that in late February 2025, "Cerner learned that an unauthorized third party had gained access to certain Cerner systems as early as

---

[11] *See, e.g.*, *Notice of Cerner's Data Security Incident*, Tennova Healthcare Lafollette Med. Ctr., https://www.tennovalafollette.com/notice-of-cerner-s-data-security-incident [https://web.archive.org/web/20260212125104/https://www.tennovalafollette.com/notice-of-cerner-s-data-security-incident] (last visited April 15, 2026).

January 22, 2025" and that "Cerner investigated the incident, engaged external cybersecurity specialists, initiated its critical incident response process, took steps to secure the impacted systems, and engaged with federal law enforcement."[12]

44. On October 28, 2025, Cener informed the Tennova Lafollette that an unauthorized third party gained access to person health information that Cerner was maintaining on behalf of the Tennova Lafollette.[13]

45. The types of information exposed include "name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment."[14]

46. Due to intentionally obfuscating language and a lack of formal notification, it is unclear how long it took Defendants to discover that they had been subject to a breach and how long cybercriminals had unfettered access to Plaintiff's and the Class's most sensitive information.

47. In other words, Defendants' cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its patients' highly sensitive Private Information. Tennova Lafollette knew or should have known that granting Oracle Health access to Plaintiff's Private Information would result in a Data Breach given Oracle Health's inadequate cybersecurity practice.

48. Despite their duties and alleged commitments to safeguard Private Information, Defendants do not in fact follow industry standard practices in securing consumers' Private Information, as evidenced by the Data Breach.

49. Oracle Health itself has not sent Data Breach notices to Plaintiff and Class

---

[12] *See* Notice of Data Breach Letter dated December 22, 2025, attached hereto as Exhibit A.
[13] *Id.*
[14] *Id.*

Members. In fact, it was reported that Oracle Health is telling hospitals that it will not be notifying patients directly and that it is the hospitals' responsibility to determine if the stolen data violates HIPAA laws and whether they are required to send notifications.[15]

50. Furthermore, Defendants have not disclosed to the public that on or around September 21, 2024, a threat actor claimed to have leaked 4,002 rows of employee information from Oracle Health. A copy of the threat actors post on the dark web is below.[16]



51. Therefore, on information and belief, the Data Breach was effectuated by means of the compromised credentials of Oracle Health's own employees. The Tennova Lafollette knew or should have known that granting Oracle Health access to Plaintiff's Private Information would result in a Data Breach given Oracle Health's inadequate cybersecurity practice.

52. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Classes' Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine

---

[15] *See* Lawrence Abrams, *Oracle Health Breach Compromises Patient Data at US Hospitals*, BLEEPING COMPUTER (Mar. 28, 2025), https://www.bleepingcomputer.com/news/security/oracle-health-breach-compromises-patient-data-at-us-hospitals/.

[16] *See Data Breach Alert, FalconFeeds.io* (Sept. 21, 2024) https://x.com/FalconFeedsio/status/1837507607701098829.

with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

53. On information and belief, Defendants plan to offer several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Private Information that cannot be changed, such as Social Security numbers.

54. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Private Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

55. On information and belief, Defendants failed to adequately train and supervise their IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over their patients' Private Information. Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information.

***The Data Breach was a Foreseeable Risk of which Defendants were on Notice.***

56. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

57. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendants knew or should have known that their electronic records and customers' Private Information would be targeted by cybercriminals.

58. In 2024, a record 3,158 data breaches occurred—resulting in 1,350,835,988 victim

11

notices (i.e., 211% increase year over year).[17]

59.     Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cyber crime." [18]

60.     Cyberattacks on medical systems and healthcare partner and provider companies like Defendants have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly." [19]

61.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry.

***Plaintiff Katherine Dossett's Experience***

62.     Plaintiff Katherine Dossett is a patient of Defendant Tennova Lafollette who obtains Plaintiff's Private Information in the course of its regular business operations.

63.     In order to receive medical services from Tennova Lafollette, and as a condition of treatment with Defendant Tennova Lafollette, Plaintiff provided her Private Information.

64.     Tennova Lafollette used that Private Information to facilitate its treatment of

---

[17] *2024 Data Breach Report*, IDENTITY THEFT RES. CTR. (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf (last visited April 15, 2026).
[18] *Gordon M. Snow Statement*, FBI (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector .
[19] *Secret Service Warn of Targeted*, LAW360 (NOV. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

65. Tennova Lafollette shared Plaintiff's Private Information with Oracle Health as part of its provision of services to Tennova Lafollette. In other words, Tennova Lafollette provided Oracle Health with Plaintiff's Private Information.

66. Upon information and belief, at the time of the Data Breach, Defendants maintained plaintiff's Private Information in their systems.

67. Plaintiff received the Notice Letter, by U.S. mail, directly from Defendant Tennova Lafollette, which was dated December 22, 2025. According to the Notice Letter, Plaintiff's Private Information—including her name, Social Security Number, and information included within your medical record, such as medical record numbers, doctors, diagnoses, medicines, tests results, images, care and treatment—was accessed by an unauthorized third party.

68. Plaintiff is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. She has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted her Private Information to Defendants had she known of Defendants' lax data security policies.

69. Defendants deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

70. As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

71. Plaintiff has and will spend considerable time and effort monitoring her accounts

13

to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

72. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

73. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

74. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

75. Specifically, Plaintiff has experienced multiple fraudulent charges to her prepaid debit card she receives for disability.

76. Also following the Data Breach, Plaintiff has been experiencing a sharp increase in spam calls and texts, receiving calls daily, further evidence that her Private Information is now in the hands of cyber criminals.

77. Plaintiff suffered actual injury from having her Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal

damages; and (ix) the continued and certainly increased risk to her Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

78. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[20] On information and belief, the spam call and fraudulent charges Plaintiff experienced is a result of the Data Breach.

79. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

80. Plaintiff greatly values her privacy, and would not have provided her Private Information, undertaken the services and paid the amounts that she did if she had known that her Private Information would be maintained using inadequate data security systems

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

81. Plaintiff and members of the proposed Classes have suffered injury from the misuse of their Private Information that can be directly traced to Defendants.

82. As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a. The loss of the opportunity to control how their Private Information is used;

---

[20] *What Do Hackers Do with Stolen Information*, AURA (Sept. 5, 2023), https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

b. The diminution in value of their Private Information;

c. The compromise and continuing publication of their Private Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Private Information; and

h. The continued risk to their Private Information, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the Private Information in their possession.

83. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

84. The value of Plaintiff's and the Classes' Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen Private Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

85. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

86. One such example of criminals using Private Information for profit is the

16

development of "Fullz" packages.

87. Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

88. The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and the Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

89. Defendants disclosed the Private Information of Plaintiff and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Private Information of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

90. Defendants' failure to properly notify Plaintiff and members of the Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability

17

to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

*Defendants Could Have Prevented the Data Breach*

91. Data breaches are preventable.[21] As Lucy Thomson wrote in the Data Breach and Encryption Handbook, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[22] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[23]

92. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs." [24]

93. In a Data Breach like the one here, many failures laid the groundwork for the Breach.

*Defendants failed to adhere to FTC guidelines.*

94. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of Private Information.

---

[21] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thomson, ed., 2012).
[22] *Id.* at 17.
[23] *Id.* at 28.
[24] *Id.*

18

95.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

a.      protect the sensitive consumer information that they keep;

b.      properly dispose of Private Information that is no longer needed;

c.      encrypt information stored on computer networks;

a.      understand their network's vulnerabilities; and

b.      implement policies to correct security problems.

96.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

97.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

98.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

99.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice

prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

*Defendants Violated HIPAA*

100. HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [25]

101. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[26]

102. The Data Breach itself resulted from a combination of inadequacies showing Defendants failure to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

    a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

    b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

---

[25] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[26] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

d. Failing to ensure compliance with HIPAA security standards by Defendants in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

103. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

*Defendants Fail to Comply with Industry Standards*

104. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of

the Private Information which they collect and maintain.

105. Several best practices have been identified that a minimum should be implemented by employers in possession of PII and PHI, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

106. Other best cybersecurity practices that are standard for employers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

107. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-02) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

108. These foregoing frameworks are existing and applicable industry standards for an employer's obligations to provide adequate data security for their patients. Upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby

22

opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

109.    Plaintiff brings this class action, under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3),

individually and on behalf of all members of the following class:

> **Oracle Health Nationwide Class:**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Oracle Health Tennessee Subclass:**
> All individuals residing in Tennessee whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Tennova Lafollette Nationwide Subclass:**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Tennova Lafollette and CHS, including those individuals who receive notice of the Data Breach.
>
> **Tennova Lafollette Tennessee Subclass:**
> All individuals residing in Tennessee whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, whose information was provided to Oracle Health by the Tennova Lafollette and CHS, including those individuals who receive notice of the Data Breach.

110.    Collectively, the Class and Subclasses are referred to as the "Classes" or "Class

members."

111.    Excluded from the Classes are Defendants and their parents or subsidiaries, any

entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal

representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom

this case is assigned as well as their judicial staff and immediate family members.

23

112. Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

113. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

114. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

115. <u>Ascertainability</u>. All Members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendants already identified some individuals and sent them Data Breach notices.

116. <u>Numerosity.</u> The Class members are so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of Class members are ascertainable through Oracle Health's, Advent Health's and their customers' records, including but not limited to, the files implicated in the Data Breach.

117. <u>Commonality.</u> There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendants engaged in the conduct alleged herein;

b. When Defendants learned of the Data Breach;

c. Whether Defendants' response to the Data Breach was adequate;

d. Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class members' Private Information;

24

e. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Defendants owed a duty to Plaintiffs and Class members to safeguard their Private Information;

i. Whether Defendants breached their duty to Plaintiffs and Class members to safeguard their Private Information;

j. Whether criminals obtained Plaintiffs' and Class members' Private Information via the Data Breach;

k. Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class members;

l. Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class members;

m. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

n. What damages Plaintiffs and Class members suffered as a result of Defendants' misconduct;

o. Whether Defendants' conduct was negligent;

p. Whether Defendants' conduct was per se negligent;

q.   Whether either Defendants were unjustly enriched;

r.   Whether Plaintiffs and Class members are entitled to actual and/or statutory damages;

s.   Whether Plaintiffs and Class members are entitled to additional credit or identity monitoring and monetary relief; and

t.   Whether Plaintiffs and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

118.   Typicality. Plaintiffs' claims are typical of those of other Class members because Plaintiffs' Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class members because, inter alia, all Class members were injured through the common misconduct of Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to the named Plaintiffs. The claims of the named Plaintiffs and those of Class members arise from the same operative facts and are based on the same legal theories.

119.   Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs' counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

120.   Predominance. Defendants have engaged in a common course of conduct toward Plaintiffs and Class members, in that Plaintiffs' and Class members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate over

26

any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

121.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

122.     Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class members affected by the Data Breach.

## CLAIMS FOR RELIEF

### Count I – Negligence
### (On Behalf of Plaintiffs and the Classes)

123.     This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under Tennessee law on behalf of Plaintiff and the Oracle Health Tennessee Subclass; 3) by Plaintiff against Tennova Lafollette, on behalf of the Tennova Lafollette Nationwide Subclass; or 4) by Plaintiff against Tennova Lafollette, under Tennessee Law on behalf of the Tennova Lafollette Tennessee Subclass.

27

124. Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

125. Defendants knowingly collected, came into possession of, and maintained Plaintiffs' and Class members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

126. Defendants knew or should have known of the risks inherent in collecting Plaintiffs' and Class members' Private Information and the importance of adequate security. Defendants were on notice because they knew or should have known that they are attractive targets for cyberattacks seeking healthcare-related data and other Private Information.

127. Defendants owed a non-delegable duty of care to Plaintiffs and Class members whose Private Information was entrusted to them. Defendants' duties included, but were not limited to, the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

    b. To protect their patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

    d. To employ reasonable security measures and to otherwise protect the Private Information of Plaintiffs and Class members pursuant to federal and state regulations including but not limited to HIPAA and the FTCA;

    e. To implement processes to quickly detect a data breach and to timely act on

28

warnings about data breaches; and

f.    To promptly notify Plaintiffs and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

128.    Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

129.    Defendants' duty also arose because, as health service providers, Defendants were bound by industry standards to protect their patients' confidential Private Information.

130.    Defendants hold themselves out as trusted data collectors, and thereby assume a duty to reasonably protect patients' information. Indeed, Defendants, as data collectors, were in a unique and superior position to protect against the harm suffered by Plaintiffs and Class members as a result of the Data Breach.

131.    Plaintiffs and Class members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

132.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' Private Information within Defendants' possession.

133.    Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Plaintiffs' and Class members' Private Information.

134.    Defendants, by their actions and/or omissions, breached their duty of care by failing

29

to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

135. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

d. Allowing unauthorized access to Class members' Private Information;

e. Failing to comply with the FTCA; and

f. Failing to detect in a timely manner that Class members' Private Information had been compromised.

136. Defendants had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions.

137. Defendants' breach of duties owed to Plaintiffs and Class members caused Plaintiffs' and Class members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

138. As a result of Defendants' ongoing failure to notify Plaintiffs and Class members regarding exactly what Private Information has been compromised, Plaintiffs and Class members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

30

139. Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

140. As a result of Defendants' negligence in breach of their duties owed to Plaintiffs and Class members, Plaintiffs and Class members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

141. As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class members have suffered damages as alleged herein and are at imminent risk of further harm.

142. The injury and harm that Plaintiffs and Class members suffered was reasonably foreseeable.

143. Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

144. In addition to monetary relief, Plaintiffs and Class members are also entitled to injunctive relief requiring Defendants to, inter alia, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

### Count II – Negligence *per se*
**(On Behalf of Plaintiffs and the Classes)**

145. This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under Tennessee law on behalf of Plaintiff and the Oracle Health Tennessee Subclass; 3) by Plaintiff against Tennova Lafollette, on behalf of the Tennova Lafollette Nationwide Subclass; or 4) by Plaintiff against Tennova Lafollette, under Tennessee Law on behalf of the Tennova Lafollette Tennessee Subclass.

31

146. Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

147. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' Private Information.

148. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiffs' and the Class members' sensitive Private Information.

149. Defendants breached their respective duties to Plaintiffs and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

150. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

151. The harm that has occurred is the type of harm the FTC Act is intended to guard against. The FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class members.

152. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and their patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class members from a data breach.

153. Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

154. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

155. But for Defendants' wrongful and negligent breach of their duties owed, Plaintiffs and Class members would not have been injured.

156. The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that the breach would cause Plaintiffs and Class members to suffer the foreseeable harms associated with the exposure of their Private Information.

33

Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

157. As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**<u>Count III – Breach of Third-Party Beneficiary Contract</u>**
**(On Behalf of Plaintiffs and the Classes)**

158. This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under Tennessee law on behalf of Plaintiff and the Oracle Health Tennessee Subclass; 3) by Plaintiff against Tennova Lafollette, on behalf of the Tennova Lafollette Nationwide Subclass; or 4) by Plaintiff against Tennova Lafollette, under Tennessee Law on behalf of the Tennova Lafollette Tennessee Subclass.

159. Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

160. Upon information and belief, Oracle Health entered into valid contracts with its clients, including the Healthcare Provider Defendants, to provide software products and/or services, including business associate agreements under HIPAA, which included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to Oracle Health.

161. Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendants agreed to receive and protect through their services.

162. The benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties, and Plaintiffs and the Class members were direct and express beneficiaries of such contracts.

163. Plaintiffs and the Class are also intended third-party beneficiaries of these contracts because recognizing them as such is appropriate to effectuate the intentions of the parties, and the

34

circumstances indicate that Defendants intended to give the beneficiaries the benefit of the promised performance.

164. Defendants knew that if they were to breach these contracts, healthcare patients, including Plaintiffs and the Classes, would be harmed by, among other harms, fraudulent transactions and the need to expend time and money to protect themselves from identity theft.

165. Defendants breached their contracts when they failed to use reasonable data security measures and/or business associate monitoring measures and allowed the Data Breach to occur.

166. As foreseen, Plaintiffs and the Classes were harmed by Defendants' failure to use reasonable data security measures to securely store and protect the files in their care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information. Accordingly, Plaintiffs and the Classes are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

**Count IV – Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Classes)**

167. This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under Tennessee law on behalf of Plaintiff and the Oracle Health Tennessee Subclass; 3) by Plaintiff against Tennova Lafollette, on behalf of the Tennova Lafollette Nationwide Subclass; or 4) by Plaintiff against Tennova Lafollette, under Tennessee Law on behalf of the Tennova Lafollette Tennessee Subclass.

168. Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

169. Defendants provide healthcare-related services to Plaintiffs and Class members. Plaintiffs and Class members formed an implied contract with Defendants regarding the provision

35

of those services through their collective conduct, including by Plaintiffs and Class members paying for services from Defendants (or having their insurance companies pay Defendants on their behalf).

170. Through Defendants' sale of medical services, they knew or should have known that they must protect Plaintiffs' and Class members' confidential Private Information in accordance with Defendants' policies, practices, and applicable law.

171. As consideration, Plaintiffs and Class members paid money (or money was paid on their behalf) to Defendants and turned over valuable Private Information to Defendants. Accordingly, Plaintiffs and Class members bargained with Defendants to securely maintain and store their Private Information.

172. Defendants solicited, offered, and invited Plaintiffs and Class members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class members accepted Defendants' offers and provided their Private Information to doctors or other healthcare professionals who then provided it to Oracle Health.

173. Defendants accepted possession of Plaintiffs' and Class members' Private Information for the purpose of providing healthcare-related services to Plaintiffs and Class members.

174. In delivering their Private Information to Defendants and paying for healthcare services, Plaintiffs and Class members intended and understood that Defendants would adequately safeguard Private Information as part of that service.

175. Defendants' implied promises to Plaintiffs and Class members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information that

36

is placed in the control of their employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

176. Plaintiffs and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

177. Had Defendants disclosed to Plaintiffs and the Classes that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and the Class members would not have provided their Private Information to Defendants.

178. As providers of healthcare-related services, Defendants recognized (or should have recognized) that Plaintiffs' and Class members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class members.

179. Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class members' Private Information. Defendants further breached these implied contracts by failing to comply with their promise to abide by HIPAA.

180. Additionally, Defendants breached the implied contracts with Plaintiffs and Class members by failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and transmitted, in violation of 45 CFR § 164.306(a)(1).

37

181. Defendants also breached the implied contracts with Plaintiffs and Class members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR § 164.312(a)(1).

182. Defendants further breached the implied contracts with Plaintiffs and Class members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR § 164.308(a)(1).

183. Defendants further breached the implied contracts with Plaintiffs and Class members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii).

184. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR § 164.306(a)(2).

185. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding PII, in violation of 45 CFR § 164.306(a)(3).

186. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to ensure compliance with the HIPAA security standard rules by their workforce, in violation of 45 CFR § 164.306(a)(4).

187. Defendants further breached the implied contracts with Plaintiffs and the Class members by impermissibly and improperly using and disclosing PHI that is and remains accessible

38

to unauthorized persons, in violation of 45 CFR § 164.502, *et seq*.

188. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard PHI, in violation of 45 CFR § 164.530(c).

189. Defendants further breached the implied contracts with Plaintiffs and the Class members by otherwise failing to safeguard Plaintiffs' and Class members' Private Information.

190. A meeting of the minds occurred, as Plaintiffs and the Class members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendants in exchange for Defendants' agreement to, inter alia, protect their Private Information.

191. Plaintiffs and the Class members have been damaged by Defendants' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

### Count V – Unjust Enrichment
### (On Behalf of Plaintiffs and the Classes)

192. This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under Tennessee law on behalf of Plaintiff and the Oracle Health Tennessee Subclass; 3) by Plaintiff against Tennova LaFollette, on behalf of the Tennova Lafollette Nationwide Subclass; or 4) by Plaintiff against Tennova Lafollette, under Tennessee Law on behalf of the Tennova Lafollette Tennessee Subclass.

193. Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

194. Plaintiffs and the Class members conferred a benefit on Defendants by turning over their Private Information to Defendants and by paying for medical services (or having their

39

insurance companies pay for medical services) that should have included cybersecurity protection to protect their Private Information. Plaintiffs and the Class members did not receive such protection.

195. Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including from payments made to it by Plaintiffs and the Class members (or on their behalf).

196. As such, a portion of the payments made by Plaintiffs and the Class members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

197. Defendants have retained the benefits of their unlawful conduct, including the amounts of payment received from Plaintiffs and the Class members that should have been used for adequate cybersecurity practices that they failed to provide.

198. Defendants knew that Plaintiffs and the Class members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiffs and the Class members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and the Class members' Private Information and prevented the Data Breach.

199. If Plaintiffs and the Class members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

200. Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

201. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have suffered and are at a continual, substantial, imminent risk of injury, as alleged herein.

202. Plaintiffs and the Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class members may seek restitution or compensation.

203. Plaintiffs and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### Count VI – Breach of Fiduciary Duty
### (On Behalf of Plaintiffs and the Classes)

204. 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under Tennessee law on behalf of Plaintiff and the Oracle Health Tennessee Subclass; 3) by Plaintiff against Tennova Lafollette, on behalf of the Tennova Lafollette Nationwide Subclass; or 4) by Plaintiff against Tennova Lafollette, under Tennessee Law on behalf of the Tennova Lafollette Tennessee Subclass.

205. Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

206. In providing their Private Information to Defendants, Plaintiffs and the Class members justifiably placed a special confidence in Defendants to act in good faith and with due regard for the interests of Plaintiffs and the Class members to safeguard and keep confidential that Private Information.

41

207. As healthcare service providers, Defendants have a fiduciary relationship to their clients, like Plaintiffs and Class members.

208. Because of that fiduciary relationship, Defendants were provided with and stored valuable and sensitive Private Information belonging to Plaintiffs and Class members, which they were required to maintain in confidence.

209. Defendants accepted the special confidence that Plaintiffs and Class members placed in it.

210. In light of the special relationship between Defendants, and Plaintiffs and Class members, whereby Defendants became guardians of Plaintiffs and Class members' Private Information, Defendants became fiduciaries by their undertaking and guardianship of the Private Information, to act primarily for the benefit of their customers, including Plaintiffs and Class members for the safeguarding of Plaintiffs' and Class members' Private Information.

211. Defendants have a fiduciary duty to act for the benefit of Plaintiffs and the Class members upon matters within the scope of their customer relationships, in particular, to keep secure the Private Information of their customers, exercise utmost care in protecting the Private Information in their possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons, and to timely notify Plaintiffs and the Class members of a data breach and disclosure.

212. Plaintiffs and Class members have a privacy interest in their Private Information.

213. Defendants breached their fiduciary duties to Plaintiffs and Class members by failing to protect the integrity of the systems containing Plaintiffs' and Class members' Private Information.

214. Defendants breached their fiduciary duties to Plaintiffs and Class members by

42

otherwise failing to safeguard Plaintiffs and Class members' Private Information and by failing to timely notify and/or warn Plaintiffs and Class members of the Data Breach.

215. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and the Class members have suffered and will suffer injuries and damages as alleged herein.

216. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and the Class members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

### Count VII – Invasion of Privacy
### (On Behalf of Plaintiffs and the Classes)

217. This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under Tennessee law on behalf of Plaintiff and the Oracle Health Tennessee Subclass; 3) by Plaintiff against Tennova Lafollette, on behalf of the Tennova Lafollette Nationwide Subclass; or 4) by Plaintiff against Tennova Lafollette, under Tennessee Law on behalf of the Tennova Lafollette Tennessee Subclass.

218. Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

219. Plaintiffs and the Class members had a reasonable expectation of privacy in the Private Information Defendants mishandled.

220. As a result of Defendants' conduct, publicity was given to Plaintiffs' and Class members' Private Information, which necessarily includes matters concerning their private life.

221. A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and the Class members' Private Information to be highly offensive.

222. Plaintiffs' and the Class members' Private Information is not of legitimate public

43

concern and should remain private.

223.    As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiffs and the Class members are at a current and ongoing risk of identity theft and sustained injuries and damages as alleged herein.

224.    Plaintiffs and the Class members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

225.    Plaintiffs and the Class members are also entitled to injunctive relief requiring Defendants to, inter alia, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate identity protection and credit monitoring services to all Class members.

### Count VIII – Declaratory Judgment
**(On Behalf of Plaintiffs and the Classes)**

226.    This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff against Tennova Lafollette, on behalf of the Tennova Lafollette Nationwide Subclass.

227.    Plaintiffs restate the allegations in Paragraphs 1 through 122 above, as if fully set forth herein.

228.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

229.    In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiffs

44

and the Class allege that Defendants' actions were—and still are—inadequate and unreasonable. And Plaintiffs and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

230. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

 a. Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

 b. Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

 c. Defendants breached, and continue to breach, their duties by failing to use reasonable measures to protect the data entrusted to them; and

 d. Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class members.

231. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to them.

232. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

233. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages— while warranted for out-of-pocket damages and other legally quantifiable and provable damages— cannot cover the full extent of Plaintiffs' and Class members' injuries.

234. If an injunction is not issued, the resulting hardship to Plaintiffs and the Class

members far exceeds the minimal hardship that Defendants could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class members, and the public at large.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class members request judgment against Defendants and that the Court enter an order:

a. Certifying this action as a class action, defining the Classes as requested herein, appointing the undersigned as class counsel, and finding that Plaintiffs are proper and adequate representatives of the Classes requested herein;

b. Awarding Plaintiffs and Class members appropriate monetary relief, including actual damages, statutory damages, nominal damages, equitable relief, restitution, disgorgement, and statutory costs;

c. Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d. Instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class members;

e. Requiring Defendants to pay the costs involved in notifying Class members about the judgment and administering the claims process;

f. Requiring Defendants to implement enhanced data security measures in order to better protect the Private Information in their possession and control;

g. Awarding Plaintiffs and Class members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h. Awarding such other and further relief as this Court may deem just and proper.

46

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs and the Class members demand a trial by jury on all triable issues.


Date: April 21, 2026

Respectfully submitted,

*/s/ Barrett J. Vahle*
Norman E. Siegel – MO #44378
Barrett J. Vahle – MO #56674
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64113
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Thomas E. Loeser
Andrew J. Fuller
COTCHETT, PITRE & McCARTHY LLP
1809 7th Ave., Ste. 1610
Seattle, WA 98101
(206) 802-1272
tloeser@cpmlegal.com
afuller@cpmlegal.com

Tyler W. Hudson
WAGSTAFF & CARTMELL, LLP
4740 Grand Ave., Suite #300
Kansas City, MO 64112
(816) 701-1100
(816) 531-2372 (facsimile)
thudson@wcllp.com

Lynn A. Toops
Amina A. Thomas
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
(317) 636-2593 (facsimile)
ltoops@cohenmalad.com
athomas@cohenmalad.com

47

John F. Garvey, #35879
Colleen Garvey, #72809
Ellen A. Thomas, #73049
STRANCH, JENNINGS & GARVEY, PLLC
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

J. Gerard Stranch, IV
Grayson Wells (MO 73068)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com


*Attorneys for Plaintiff and Proposed Classes*

48